Stephanie A. Hambrick
Wyoming State Bar No. 6-2785
Assistant United States Attorney
District of Wyoming
P.O. Box 22211
Casper, Wyoming 82602
(307) 261-5434
stephanie.hambrick@usdoj.gov

FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2017 SEP -6  AM 11: 05

STEPHAN HARRIS, CLERK
CASPER

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Case No. 17-CV-149-MLC |
| $20,337.00 in U.S. CURRENCY | VERIFIED COMPLAINT FOR FOREITURE *IN REM* |
| Defendant Property. | |

### VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

United States of America, by and through Assistant United States Attorney Stephanie A. Hambrick, brings this verified complaint and alleges as follows in accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions:

### NATURE OF THE ACTION

1. This is an action to forfeit and condemn to the use and benefit of the United States of America the following property: United States currency in the amount of $20,337.00 (hereinafter "defendant property"), for violations of 21 U.S.C. §§ 841(a)(1), 846, and pursuant to 21 U.S.C. § 881(a)(6).

### THE DEFENDANT IN REM

2. The defendant property consists of the following property: United States currency in the amount of $20,337.00 more or less, that were seized from Jacob C.A. Dotson and Dustin L.

Alvis on July 8, 2017, at the following location: Trout Lake Trailhead, Yellowstone National Park, Wyoming, which is located in the District of Wyoming. It is presently in the custody of the Drug Enforcement Administration and under the direction and control of the Drug Enforcement Administration for the District of Wyoming.

## JURISDICTION AND VENUE

3. Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. §1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b). Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1395(b), because the property sought to be forfeited is located in this district, and also pursuant to 28 U.S.C. § 1355(b)(1)(A) because the property sought to be forfeited was seized in this district and because sufficient acts giving rise to the forfeiture occurred in this district.

## BASIS FOR FORFEITURE

6. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes 1) money furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; 2) proceeds traceable to such an exchange; and/or 3) money used and intended to be used to facilitate a violation of the Controlled Substances Act.

## FACTS

7. On July 8, 2017, Ranger Brad Jones (Ranger Jones), observed a silver Pontiac with Illinois state license plates driving westbound at a rate of speed in excess of the posted speed limit of 45 m.p.h. Ranger Jones confirmed the speed of the vehicle with his radar unit. The vehicle was

traveling at 61 m.p.h. Based upon the speed of the vehicle, Ranger Jones made a traffic stop at Trout Lake Trailhead in Yellowstone National Park, Wyoming.

8. Ranger Jones approached the vehicle and while talking with the occupants of the vehicle, Ranger Jones smelled the odor of burnt marijuana and asked the occupants of the vehicle if there was any marijuana in the vehicle, to which both occupants stated, "[n]o."

9. Ranger Jones asked the occupants why then did the vehicle smell like marijuana. The occupants responded the vehicle didn't smell like marijuana.

10. The driver stated to Ranger Jones that the last time he smoked marijuana in the vehicle was "about a month ago."

11. Ranger Jones identified the driver of the vehicle as Jacob C.A. Dotson (Dotson) from Galesburg, Illinois. Dotson was the registered owner of the vehicle.

12. Dotson stated he didn't have his license because he had lost it during the trip between Illinois and Yellowstone National Park.

13. Ranger Jones asked Dotson to exit the vehicle. Dotson complied.

14. Ranger Jones notice Dotson had items in the pockets of his sweatpants. Ranger Jones asked Dotson if he had anything in his pockets and Dotson pulled a purple container out of one of his pocket which contained a trace of marijuana. Ranger Jones had Dotson empty his pockets and patted Dotson down for weapons.

15. Ranger Jones then asked the passenger to exit the vehicle. Ranger Jones identified the passenger as Dustin Alvis (Alvis) from Mattoon, Illinois.

16. Ranger Jones conducted a search of the vehicle based upon probable cause to believe drugs were located in the vehicle.

17. The search of the vehicle revealed:

    a.    A glass pipe with suspected marijuana residue.

    b.    A backpack containing:

        1.    Two marijuana joints.

        2.    Loose marijuana flakes.

        3.    A large amount of cash in main compartment of backpack.

        4.    An envelope containing a large amount of $100 bills.

        5.    A Crown Royal bag containing three large bundles of cash.

    c.    A glass jar containing approximately 6.5 grams of marijuana (tested presumptive positive for marijuana).

    d.    A small bottle of THC oil (tested presumptive positive for marijuana).

    e.    A marijuana joint located in the passenger side door panel pocket.

    f.    A plastic container containing approximately .4 grams of marijuana (tested presumptive positive for marijuana).

18.    Ranger Jones determined there was approximately $20,000.00 located in the backpack.

19.    Dotson was interviewed by Ranger Jones at the traffic stop scene. Dotson stated:

    a.  Some of the marijuana contraband in the vehicle was his.

    b.  He works for a department store in the shoe department.

    c.  He put approximately $11,000.00 in the backpack when he and Alvis left Illinois.

    d.  He didn't use a credit or debit card for the money because he didn't want to leave a paper trail.

    e.  He has expensive taste, that's why so much cash.

20.    Alvis was interviewed by Ranger Jones at the traffic stop scene. Alvis stated:

    a.  Some of the marijuana contraband in the vehicle was his.

    b. His work entails cleaning trailers and some other side jobs.

    c. $10,000.00 of the cash in the backpack was his.

    d. He brought the cash with him on the trip because he didn't have any one to watch it.

    e. He doesn't keep money in a bank.

    f. He keeps his money under his mattress.

21. Dotson and Alvis were arrested and transported to Mammoth Hot Springs, Wyoming.

22. A custodial interview was conducted with Alvis.

    a. Alvis stated he had been saving the $10,000.00 "all his life."

    b. Alvis stated he lives with his mother and sometimes works for his aunt doing odd jobs.

    c. When pressed for more details of his trip, Alvis asked for an attorney.

23. A custodial interview was conducted with Dotson.

    a. Dotson stated he received the $11,000.00 from his work as a shoe salesperson, commissions earned as a shoe salesman, birthday money from his grandpa and odd jobs.

    b. Dotson eventually stated none of the money was his, but was Alvis' money.

    c. The money was to purchase marijuana in Oregon for redistribution in Illinois.

    d. Dotson signed a statement that none of the money in the backpack was his.

WHEREFORE, the United States of America asserts there is a reasonable basis for believing that the defendant property is subject to forfeiture to the United States under 21 U.S.C. § 881(a)(6) and prays for the following judgment and relief:

(1) That a warrant of arrest *in rem* be issued to the United States Marshal Service commanding an agent to arrest and retain custody of the defendant property, and to publish notice

as required by the Supplemental Rules for Admiralty and Maritime Claims and Asset Forfeiture Actions.

(2) That notice be given to all persons claiming an interest in the defendant property and all other interested parties to appear and show cause why the forfeiture should not be decreed;

(3) That the Court order, adjudge and decree the defendant property be condemned and forfeited to the United States of America for disposition according to law;

(4) That the Court find reasonable cause for the seizure of the defendant property and grant a certificate of reasonable cause pursuant to 28 U.S.C. § 2465; and

(5) That Plaintiff United States of America be granted such other and further relief, as appropriate, together with the costs and disbursements of this action.

Dated this 6th day of September, 2017.

JOHN R. GREEN
Acting United States Attorney

By: *Stephanie Hambrick*
STEPHANIE A. HAMBRICK
Assistant United States Attorney

## VERIFICATION

I am a Special Agent of the Drug Enforcement Administration, and have been so employed since 2002. As a special agent, my duties are to investigate potential violations of laws under Title 18 and 21 of the United States Code.

I have read the contents of the foregoing Complaint for Forfeiture *in rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this 4th day of September, 2017.

_____
BRYAN W. SMITH, Special Agent
Drug Enforcement Administration